**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| C.J.B., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 4:25-cv-39-AGH |
| | : | Social Security Appeal |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

## ORDER

The Social Security Commissioner, by adoption of the Administrative Law Judge's ("ALJ's") determination, denied Plaintiff's application for disability insurance benefits, finding he is not disabled within the meaning of the Social Security Act and accompanying regulations. Plaintiff contends the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g). All administrative remedies have been exhausted. Both parties filed their written consents for all proceedings to be conducted by the United States Magistrate Judge, including the entry of a final judgment directly appealable to the Eleventh Circuit Court of Appeals pursuant to 28 U.S.C. § 636(c)(3). For the reasons explained below, the Commissioner's decision is affirmed.

## LEGAL STANDARDS

### I.    Standard of Review

The Court's review of the Commissioner's decision is limited to a determination

of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). "Substantial evidence is something more than a mere scintilla, but less than a preponderance. If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citation and quotation marks omitted). The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The Court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980).[2] The Court must scrutinize the record as a whole to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*

## II.   Plaintiff's Burden

The claimant bears the initial burden of proving he is unable to perform his

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

previous work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). The claimant's "burden is a heavy one, so stringent that it has been described as bordering on the unrealistic." *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981). A claimant seeking Social Security disability benefits must demonstrate they suffer from an impairment that prevents them from engaging in any substantial gainful activity for a twelve-month period.    42 U.S.C. § 423(d)(1)(A).    In addition to meeting the requirements of the statute, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1, *et seq*.

## III.    Disability Standard

Under the regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4). First, the Commissioner determines whether the claimant is working. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is "working and the work [the claimant is] doing is substantial gainful activity," the Commissioner will find that the claimant is not disabled. *Id.* § 404.1520(b). Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). A claimant must have a "severe impairment" which is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Third, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 to subpart P of Part 404 of the regulations. *Id.*

§ 404.1520(a)(4)(iii).  Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC") can meet the physical and mental demands of past work.  *Id.* § 404.1520(a)(4)(iv).  Fifth and finally, the Commissioner determines whether the claimant's RFC, age, education, and past work experience prevent the performance of any other work.  20 C.F.R. § 404.1520(a)(4)(v).  In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling.  *Id.* § 404.1523(c).  The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal.  *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 806 (11th Cir. 2013).

### ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for disability insurance benefits on November 1, 2019, alleging that he became disabled to work on April 29, 2014.  Tr. 24.[3]  His claim was denied initially on December 6, 2019, and again upon reconsideration on January 17, 2020.  *Id.*  He timely requested an evidentiary hearing before an ALJ on January 27, 2020, and one was held telephonically on September 2, 2021.  *Id.*  Plaintiff appeared *pro se* and testified, as did an impartial vocational expert ("VE").  Tr. 24, 48-74.  On October 7, 2021, the ALJ issued an unfavorable decision denying his claim.  Tr. 21-40. Plaintiff sought review by the Appeals Council but was denied review on February 15, 2022.  Tr. 4-9.  Plaintiff then sought review of the denial in this Court, which resulted in a remand for further administrative proceedings on October 17, 2022.  Tr.

---

[3] The Court cites to the record using the Commissioner's Bates-stamped page numbers at the bottom right of each page as opposed to the Court's CM/ECF number at the top right of the page.

1976-77.  On August 12, 2023, the Appeals Counsel remanded the case to the ALJ. Tr. 1981-88.  Plaintiff appeared with his attorney and testified before the ALJ on August 1, 2024. Tr. 1956-75.  The ALJ issued an unfavorable decision on October 16, 2024.  Tr. 1926-45.  Having exhausted the administrative remedies available to him under the Social Security Act, Plaintiff seeks judicial review of the Commissioner's final decision denying his application.  His case is ripe for review.  42 U.S.C. § 405(g).

## STATEMENT OF FACTS AND EVIDENCE

On the date last insured, Plaintiff was 47 years old, which is defined as a younger individual under the Commissioner's regulations.  Finding 7, Tr. 1943; 20 C.F.R. § 404.1563(c).  He has a limited education.  Finding 8, Tr. 1943; 20 C.F.R. § 1584.  Plaintiff's past relevant work is unskilled, so transferability of job skills was not at issue.  Finding 9, Tr. 1944; 20 C.F.R. 404.1568.  In conducting the five-step sequential analysis used by the Commissioner in evaluating claims for disability, the ALJ found at step two that Plaintiff has the following severe impairments: (1) degenerative disc disease of the lumbar spine with history of lumbar fusion; (2) cervical degenerative disc disease of the cervical spine; (3) bilateral hip osteoarthritis; (4) obesity; and (5) bilateral carpal tunnel syndrome.  Finding 3, Tr. 1932.  The ALJ next found at step three that these impairments, considered both alone and in combination with one another, neither meet nor medically equal a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Finding 4, Tr. 1932-33. Between steps three and four, the ALJ determined that Plaintiff retains the RFC to perform light work, including sedentary work, with exertional, non-exertional, and

environmental limitations, including a limitation to simple tasks and instructions. Finding 5, Tr. 1933-34. At step four, the ALJ found that this RFC rendered Plaintiff unable to perform his past relevant work as a machine operator for food packaging. Finding 6, Tr. 1943. As an alternative step-five finding, the ALJ elicited testimony from the VE that through the date last insured, there were jobs existing in significant numbers in the national economy that Plaintiff could perform based on his age, education, work experience, and RFC. Finding 10, Tr.1944. Therefore, the ALJ found Plaintiff to be not disabled to work. Finding 11, Tr. 1945.

## DISCUSSION

Plaintiff raises one enumeration of error: that the ALJ's RFC is not supported by substantial evidence. Plaintiff alleges that the ALJ improperly assessed the evidence in two ways. First, he contends that the ALJ failed to "link" Plaintiff's RFC to substantial evidence. Pl. Br. 10, ECF No. 13. Second, he asserts that the ALJ improperly evaluated Dr. Bronersky-Enumah's medical opinions. *Id.* at 14. The Court disagrees with Plaintiff and affirms the Commissioner's decision.

## I.    Formulation of the RFC

Plaintiff argues that the ALJ substituted his own judgement for that of a treating physician by "com[ing] to a judgment on the Plaintiff's capacities based on a lay reading of the medical evidence." Pl.'s Br. 11-12. Additionally, he claims that the ALJ failed to provide "narrative discussion with citation to evidence in the record," in dereliction of the Appeals Council's order remanding the case. *Id.* at 12-14. Plaintiff thus concludes that the ALJ's opinion is not supported by substantial evidence and

must be remanded.  The Commissioner argues that the ALJ complied with the regulations and with the Appeals Council's order, and therefore, his RFC determination is supported by substantial evidence.  Def. Br. 5-9.  For the reasons explained below, the Court agrees with the Commissioner and finds that the ALJ did not err in formulating Plaintiff's RFC.

A.   The ALJ Correctly Formulated Plaintiff's RFC

As explained above, Plaintiff asserts that the ALJ improperly assessed Plaintiff's RFC.  Pl. Br. 10-12.  Outside of citing to case law explaining an ALJ's duties and limitations, Plaintiff does not point to specific areas of the analysis wherein the ALJ "interpret[ed] the raw data . . . to determine the RFC on his own," nor where the ALJ "substitute[d] his own judgment for that of a medical expert."  Pl.'s Br. 11.  However, to ensure its analysis is thorough, the Court evaluates Plaintiff's claim.

The ALJ—not a doctor—has the responsibility of assessing a claimant's RFC.  20 C.F.R. § 404.1546(c); *see Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("[T]he ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC."); *Dale v. Comm'r of Soc. Sec.*, No. 2:20-cv-521-NPM, 2022 WL 909753, at *7 (M.D. Fla. Mar. 29, 2022) ("[A]n ALJ does not assume the role of a doctor by sorting through the conflicting evidence and making an RFC assessment."); *Bryant v. Colvin*, No. CV 115-005, 2016 WL 1070840, at *2 (S.D. Ga. Mar. 16, 2016) (rejecting argument RFC was "not supported by substantial evidence because there [was] not an expert-assessed RFC directly supporting it").  Contrary to Plaintiff's suggestion, the

ALJ did not improperly insert his own judgment regarding Plaintiff's capabilities; rather, he reviewed the medical providers' clinical findings and assessments and formulated an RFC accordingly.

The ALJ began his analysis by summarizing Plaintiff's testimony during both administrative hearings. Tr. 1934; *see also* Tr. 50-74, 1958-75. Plaintiff claimed that, during the relevant period of April 29, 2014, to September 30, 2017, he suffered severe back pain that persisted despite surgical intervention, pain and disfunction in his hands as a result of carpal tunnel syndrome, and fatigue and restlessness as a side effect of anxiety medication. Tr. 1934. Additionally, Plaintiff explained that his HIV diagnosis affects him more mentally than physically. *Id.* The ALJ considered Plaintiff's medical records in addition to the hearing testimony and found that "[Plaintiff's] impairments could reasonably be expected to cause the alleged symptoms." *Id.* However, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence in the record." Tr. 1934-35.

In support of this finding, the ALJ cites medical evidence in the record that contradicts Plaintiff's claims and reinforces the RFC determination. *See Roger J. v. Comm'r, Soc. Sec. Admin.,* No. 1:24-cv-3184-JSA, 2025 WL 3303047, at *4 (N.D. Ga. Sept. 26, 2025) ("[T]he ALJ must also provide a narrative section in the written opinion that describes how he or she arrived at the RFC assessment, including a description—supported by facts—of how the evidence in the record supports each conclusion."). The below review of the ALJ's discussion of Plaintiff's record is

8

sufficient for the Court to determine that the RFC is supported by substantial evidence. *Id.* at *5 (internal citation omitted) ("[An] ALJ is not required to refer specifically to every piece of evidence in his decision, so long as a reviewing court can conclude that the ALJ considered the claimant's medical condition as a whole.").

First, regarding Plaintiff's back pain, the ALJ noted that Plaintiff sustained a "work-related back injury in 2012 after lifting heavy weight." Tr. 1935. He then "underwent a bilateral L4-L5 decompression lumbar laminotomy and bilateral L4-L5 and L5-S1 fusion on April 29, 2014." *Id.* (citing Tr. 1615-1618, 1637, 1674, 1732, 1814). Although Plaintiff continued to have low back and neck pain, the ALJ determined that Plaintiff's pain caused no greater limitations than those set forth in his RFC assessment. To support his findings, the ALJ pointed to the results of Plaintiff's spinal imaging. Tr. 1935-36. This included the results of x-rays performed on Plaintiff's lumbar and cervical spine from August 2015, x-rays of his cervical spine from March 2016, and a lumbar MRI from September 2014. Tr. 1935 (citing Tr. 1612, 1668-69, 1679). According to the reports, these images showed "mild disc space narrowing at L5-S1, normally aligned facets, unremarkable osseous density, and no identified focal osseous lesions"; "mild degenerative changes with disc space narrowing and anterior osteophyte formation at C5-C6"; "unchanged grade 1 anterolisthesis of L5 on S1 and unchanged degenerative changes mainly at L4-L5 and L5-S1"; and "loss of normal cervical lordosis with anterior osteophyte formation on the anterior aspect of C5 with slight narrowing of the disc space." *Id.*

9

The ALJ also cited to spine treatment records indicating that "[d]uring the relevant period, [Plaintiff's] symptoms have waxed and waned." Tr. 1935. While "some examinations revealed positive findings" of Plaintiff's reduced capabilities, others "show[ed] normal findings." *Id.* The ALJ observed that "many examinations noted an antalgic gait and there was some reference to the claimant using a cane to ambulate, other examinations noted a normal gait." Tr. 1935 (citing Tr. 1045, 1057, 1572, 1576, 1580, 1588, 1629, 1632, 1635, 1647-48, 1661, 1672, 1676, 1679, 1699, 1718, 1721, 1726, 1732, 1734,1768, 1770-71, 1798, 1801). Additionally, the ALJ explained, treating physician Dr. Thomas N. Brenard, Jr., noted that "Plaintiff did not need any further treatment for his spine," and that he "was capable of the jobs proposed on the physical capabilities form that he had signed previously." Tr. 1936 (citing Tr. 1174); *see also* Tr. 1173. To summarize Plaintiff's evidence regarding his back, the ALJ found:

> [W]hile some examinations note decreased range of motion and tenderness in his lumbar and cervical spine, as well as diminished sensation and positive Spurling's and sciatic stretch maneuvers, these findings are not consistent. Moreover, the examinations consistently note no atrophy, edema, cyanosis or clubbing, normal strength, and reflexes as well as no muscle spasms.

Tr. 1937.

Next, regarding Plaintiff's alleged hand limitations, the ALJ found that Plaintiff's records "reflect a history of bilateral carpal tunnel syndrome during the relevant time" that "supports [Plaintiff's] testimony that he had problems with his hands." Tr. 1936 (citing Tr. 1715, 1878). Taking this information into consideration, the ALJ limited Plaintiff to "frequent handling and fingering bilaterally." Tr. 1937.

Additionally, the ALJ considered the implications of Plaintiff's obesity, finding that it "may have an adverse impact upon co-existing impairments." Tr. 1936 (citing 1591, 1632, 1679, 1721, 1729, 1770-71). Finally, the ALJ analyzed the consistency and persuasiveness of medical opinions specified by the Appeals Council. Tr. 1937-43. After comparing the physicians' opinions to Plaintiff's medical record, the ALJ found Dr. Bernard's opinion in December 2013 to be "generally persuasive" and his later opinions to be either "partially persuasive" or "not persuasive"; Dr. White's opinions to be partially persuasive and partially "inconsistent with the medical record"; Dr. Robert H. Jordan's opinions to be "supported" but "inconsistent" with specific findings; and Dr. Sprout's opinions to be "generally persuasive." Tr. 1937-43.

Overall, the ALJ found that while Plaintiff "sustained a work-related back injury which resulted in surgery in April of 2014, examinations and diagnostic testing following the same are not particularly adverse." Tr. 1937. Plaintiff's "use of a cane for ambulation" appeared inconsistent. *Id.* Especially perplexing to the ALJ, Plaintiff appeared to be performing manual labor outside to the extent that he became overheated in June 2017, near the expiration of the date last insured. Tr. 1937 (citing Tr. 650, 652). This incident led the ALJ to conclude that Plaintiff "was more active during the relevant time than alleged." Tr. 1937. The ALJ determined that, "when considered in conjunction with the . . . treatment records, the claimant's allegations regarding his limitations in daily activities during the relevant time are not consistent with the overall record prior to the date last insured." *Id.*

11

Thus, the ALJ concluded that Plaintiff had the RFC to perform light work, subject to the following limitations:

> lifting ten pounds frequently, fifteen pounds occasionally; stand and walk limited to four hours per 8 hour work day; no operation of foot controls; occasional climbing ramps and stairs, no climbing ladders ropes or scaffolds, occasional balancing, stooping, kneeling, crouching, and no crawling; occasional overhead reaching bilaterally; frequent handing and fingering bilaterally; avoid concentrated exposure to vibration; no direct exposure to hazardous conditions including unprotected heights or moving mechanical parts. He is limited to simple tasks and simple instructions.

Tr. 1933-34. Contrary to Plaintiff's argument, the foregoing assessment shows that the ALJ went well beyond "formulat[ing] an RFC based on bare medical records." *See* Pl.'s Br. 11. Rather, the ALJ synthesized testimony from Plaintiff's administrative hearings, medical records, and medical opinions to formulate Plaintiff's RFC. *See* 20 C.F.R. §404.1546(c); *Castle*, 557 F. App'x at 853; *Watkins v. Comm'r, Soc. Sec. Admin.*, No. 23-12765, 2025 WL 18514, at *17 (11th Cir. Jan. 2, 2025) (affirming the ALJ's opinion where the ALJ "first consider[ed Plaintiff's] functional limitations and restrictions and then express[ed Plaintiff's] residual functional limitations in terms of exertional and non-exertional levels," then "found that the evidence did not support the level of disability that [the plaintiff] claimed."). Therefore, the Court finds that substantial evidence supports the ALJ's RFC determination.

B.   The ALJ Complied with the Appeals Council's Order

Plaintiff also argues that the ALJ failed to follow the Appeals Council's order when reviewing Plaintiff's case. Pl.'s Br. 13-14. When a case is remanded from the Appeals Council, "[t]he administrative law judge shall take any action that is ordered

12

by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 416.1477(b). "A survey of cases addressing an ALJ's compliance with remand orders finds courts look to some specific command by the [Appeals Council], and whether or not the command was accomplished." *Mepham v. Colvin*, No. CV 315-046, 2016 WL 3675805, at *4 (S.D. Ga. July 6, 2016), *report and recommendation adopted*, No. CV 315-046, 2016 WL 4083751 (S.D. Ga. Aug. 1, 2016). At issue here is the Appeals Council's directive that the ALJ must provide "narrative discussion with citation to evidence in the record explaining the basis for limitations found." *See* Pl.'s Br. 13-14; Tr. 1985.

Plaintiff claims that "the ALJ not only failed to comply with the regulations that he provide a narrative discussion with citation to evidence in the record explaining his basis for the limitations, but he also failed to comply with the explicit order from the Appeals Council directing him to do so." Pl.'s Br. 14. To support this assertion, Plaintiff quoted three paragraphs wherein the ALJ does not specifically cite to the record. Pl.'s Br. 12-13 (citing Tr. 1933-37). This argument is without merit. Plaintiff characterizes these three paragraphs—in his own words—as "the ALJ summariz[ing] the evidence of record and evaluat[ing] the opinions." Pl.'s Br. 13. Reading these paragraphs in context reveals that the ALJ is discussing his conclusions regarding Plaintiff's RFC, which are based upon his review of the record to which he provides thorough citation in the preceding and following paragraphs, as discussed above. *See* Tr. 1934-43. A "narrative discussion" requires just that: the ALJ must "describe[e] how the evidence supports each conclusion, citing specific

13

medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996). Because the ALJ complied with the Appeal Council's order, and because the RFC is supported by substantial evidence, this Court must affirm the ALJ's decision.

## II.   The ALJ's Evaluation of Dr. Bronersky-Enumah's Medical Opinions

Plaintiff further contends that the ALJ failed to "consider" Dr. Bronersky-Enumah's medical opinion in conformity with the requirements of 20 C.F.R. §§ 404.1520c(a), 404.1520c(b), 404.1520c(c). Pl.'s Br. 14. Thus, Plaintiff claims the ALJ's opinion is not supported by substantial evidence and, therefore, the Court cannot conduct a meaningful review. *Id.* For the reasons articulated below, the Court disagrees with Plaintiff and affirms the ALJ's opinion.

### A.   The Standard for Evaluating Medical Opinions

When ALJs make RFC determinations at steps four and five of the disability determination standard procedure, they "must always consider and address medical source opinions." SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996). Pursuant to the revised regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). The ALJ will, instead, consider all medical opinions through the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.*

14

§ 404.1520c(c)(1)-(5).  Supportability and consistency are the most important factors the Commissioner considers when determining how persuasive to find a medical opinion, and, therefore, an ALJ must explain how these two factors are considered in his or her decision.  *Id.* § 404.1520c(b)(2).  The remaining factors need only be discussed if the record contains persuasive differing medical opinions.  *Id.* § 404.1520c(b).  Here, the Court finds that the ALJ assessed the physician's opinion in conformity with the requirements of 20 C.F.R. § 404.1520c(b)(2).

B.    The ALJ's Evaluation of Dr. Bronersky-Enumah's Opinions

On April 14, 2016, March 30, 2017, October 23, 2017, and May 18, 2017, Dr. Lois Bronersky-Enumah ("the doctor") completed medical source statements ("MSS") evaluating Plaintiff's ability to do work-related physical activities on a sustained basis in a work setting.  Tr. 1680-85, 1687-89, 1736-41, 1780-85.  The ALJ considered the doctor's four MSS, in addition to other physicians' opinions, when making Plaintiff's RFC determination.  Tr. 1940-43.  The ALJ found each MSS inconsistent and unpersuasive.  *Id.*

The ALJ evaluated each MSS methodically.  First, he recounted the limitations and observations the doctor recorded during each evaluation.  Tr. 1940-43.  For example, in each MSS, the ALJ reported that, according to the doctor, Plaintiff could "lift 5 pounds occasionally, and 1 pound frequently, sit for 1 hour and stand and walk for less than 1 hour during an 8-hour workday."  *Id.*  Then, for each MSS, the ALJ determined that the doctor's "opinion [was] not consistent with or supported by the longitudinal record."  *Id.*  Specifically, the ALJ discerned that the doctor

15

overestimated Plaintiff's limitations:

> [M]any of the claimant's symptoms have fluctuated and have not remained consistent during the relevant period. In this regard, some examinations have shown a normal gait and no assistive device to assist with ambulation. Moreover, the record has consistently reflected no atrophy, edema, cyanosis, or clubbing, as well as normal muscle strength, normal reflexes, and normal muscle tone . . . . Also, there is no support that the claimant will miss 4 or more days, or that he will require up to 6 hours in additional breaks each day, especially when he is noted to have been working in his yard for so long in the heat close to the date last insured, that he needed to be treated at the emergency room for heat exhaustion. As noted earlier, the claimant does not consistently use a cane or other device to walk.[4]

*Id.* The ALJ further noted that "while there is some support for some limitations involving the claimant's hands," the doctor's limitations listed within the four MSS "are not supported by findings such as a positive Tinel's or Phalen's signs, weakness of grip or strength in the hands, loss of sensation in the hands, or documented indications that the claimant had difficulty using hands to operate zippers or buttons." *Id.* Additionally, regarding Plaintiff's mental impairments documented in Plaintiff's April 14, 2016 and May 18, 2017 MSS, the ALJ determined that "the doctor's limitations . . . are not supported for the reasons outlined above where the claimant is noted to have mild mental impairments." Tr. 1940, 1943. Specifically, the ALJ explained that the record reflects "normal mental status examinations, and no indication of any referral for intensive mental health treatment." *Id.*

Finally, the ALJ concluded each analysis by reinforcing the standard that Plaintiff's inability to work is "an issue reserved for the Commissioner," regardless of

---

[4] The Court notes that there are some Scrivner's errors between the four paragraphs wherein the ALJ provides this analysis; however, these errors do not change the meaning of the analyses.

the doctor's determination.  Tr. 1941-43; *see* 20 C.F.R. 404.1527(d).  Thus, because the doctor's conclusions conflicted with Plaintiff's medical records and other physicians' findings, the ALJ held that each MSS was unpersuasive.[5]

>  C.      The ALJ Properly Evaulated Dr. Bronersky-Enumah's Opinions

When assessing medical findings, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  As explained above, the most important factors that the ALJ must consider when evaluating the persuasiveness of a medical opinion are supportability and consistency.  20 C.F.R. § 404.1520c(b)(2).  The regulation specifically directs the ALJ to "explain how [they] considered the supportability and consistency factors for a . . . medical opinion . . . in [the applicant's] determination or decision."  *Id.*  Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* § 404.1520c(c)(1).  Consistency is measured similarly: "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

---

[5] The ALJ made a unique observation regarding the Plaintiff's October 23, 2017 MSS: [the MSS] reference[d] the claimant reporting he is unable to work, and has chronic pain in his hands and legs, but as noted above, the doctor does not agree with this statement and instead outlines restrictions within which the claimant may work." Tr. 1943

nonmedical sources in the claim, the more persuasive the medical opinion(s) prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

Plaintiff contends that the ALJ's evaluations of the four MSS were insufficient to permit meaningful review. Pl.'s Br. 17. Specifically, he characterizes the ALJ's discussion of "Plaintiff's fluctuating symptoms, one instance of him working in the yard and necessitating ER treatment for heat exhaustion, lack of objective findings in his hands, and lack of mental health evidence" as "the ALJ really [doing] nothing to actually support his rejection of these multiple disabling opinions." *Id.* In response, the Commissioner points to specific places within the ALJ's analysis wherein the ALJ explains his reasoning for finding the four MSS unpersuasive. Def. Br. 10-12. The Court disagrees with Plaintiff's assessment and agrees with the Commissioner that the ALJ properly evaluated the doctor's opinions.

ALJs are consistently found to have conducted proper evaluations of medical opinions where they explain how the physician's medical opinion was supported or undermined by other physicians' opinions or by the claimant's medical records. *See, e.g.*, *Smith v. Soc. Sec. Admin., Comm'r*, No. 22-11407, 2023 WL 6938521, at *6 (11th Cir. Oct. 20, 2023) (holding that the ALJ properly evaluated the claimant's medical opinions when the ALJ discussed the persuasiveness of each medical opinion in the record compared with the evidence from the other medical and nonmedical sources); *Ohneck v. Comm'r, Soc. Sec. Admin.*, No. 22-13984, 2023 WL 8946613, at *3 (11th Cir. Dec. 28, 2023) (affirming the ALJ's determination that a medical opinion lacked supportability where the ALJ explained that a doctor's own treatment notes

18

undermined her opinion as to the claimant's disability); *T.C.R. v. Comm'r of Soc. Sec.*, No. 5:24-CV-296-CHW, 2025 WL 2181409, at \*5 (M.D. Ga. Aug. 1, 2025) ("The ALJ then *explained* that Dr. Cain's opinion was not fully persuasive because it was not consistent with other objective medical evidence that Plaintiff exhibited a normal gait and motor strength and no atrophy.") (emphasis added); *T.C. v. Comm'r of Soc. Sec. Admin.*, No. 1:22-cv-125, 2023 WL 7458851, at \*4 (M.D. Ga. July 27, 2023) (holding that an ALJ properly evaluated a medical opinion where "the ALJ found Dr. Vance's opinions were not persuasive because Dr. Vance's opinions regarding the severity of Plaintiff's limitations were 'not supported by treatment notes and they [we]re [in]consistent with the longitudinal record[,] including sustained activities of daily living,' administration assessments, and treatment notes of Plaintiff's other medical care providers.") (alterations original).

Here, the ALJ evaluated the four MSS consistent with the regulations' requirements. As discussed above, the ALJ chronicled the findings in each relevant MSS, found them inconsistent with Plaintiff's medical records, and then gave detailed explanations for that determination. He then noted that these inconsistences rendered each MSS unpersuasive. In support of these analyses, the ALJ pointed to evidence that contradicted the doctor's opinions.

For example, the ALJ reported that, at different times throughout Plaintiff's medical history, his medical records show that he had "a normal gait and no assistive devices to walk, and he is noted consistently to have no atrophy, edema, cyanosis, or clubbing, as well as normal muscle strength, normal reflexes, and normal muscle

19

tone." Tr. 1940-43. Furthermore, the ALJ noted from Plaintiff's records that—three years after his alleged disability onset date—he possessed the capacity to "work outside all day" to the extent of becoming "overheated" and "cramping all over." Tr. 649, 1940-43. Plaintiff would have the Court rely on the four opinions that he characterizes as "disabling" when, only one month after the doctor issued her May 18, 2017 opinion, he was able-bodied enough to engage in rigorous manual labor. Pl.'s Br. 17; Tr. 649. Instead, the ALJ determined that Plaintiff's ability to engage in physical labor to this extent contradicted the doctor's determination that he "will miss 4 or more [work] days, or that he will require up to 6 hours in additional breaks each day." Tr. 1940-43. Additionally, the ALJ remarks, and the report shows, that the doctor did not provide evidence in support of this determination. Tr. 1680-85, 1687-89, 1736-41, 1780-85.

Additionally, the ALJ points to an absence of evidence in the record supporting the idea that Plaintiff is limited given his alleged hand injuries and mental illness. Tr. 1940-43. Specifically, the ALJ found that none of Plaintiff's records show "positive Tinel's or Phalen's signs, weakness of grip or strength in the hands, loss of sensation in the hands, or documented indications that the claimant had difficulty using his hands to operate zippers or buttons." *Id.* Regarding Plaintiff's mental impairments, the ALJ's review of the record showed that Plaintiff's mental examinations were "normal" and that he had never received a "referral for intensive mental health treatment." *Id.*

20

The ALJ concluded that the doctor's opinions were "overestimates" of Plaintiff's limitations. Tr. 1940-43. Importantly, the ALJ's decision must be read as a whole. *See Holland v. Comm'r of Soc. Sec.*, No. 2:21-cv-858-KCD, 2023 WL 2300593, at *3 (M.D. Fla. Mar. 1, 2023) (noting that while the ALJ's decision did not "parrot[] the words 'supportability' and 'consistency', her decision addressed the required factors through its discussion of the record evidence" (citing *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses[.]"))). While merely mentioning the words "consistency" and "supportability" without further explanation would render his analyses insufficient, the ALJ here provided specific explanations contextualizing both of these factors. *See* 20 C.F.R. § 404.1520c(b)(2); Tr. 1940-42 ("The doctor's opinion is not *consistent* with or *supported* by the longitudinal record."), Tr. 1941-43 ("[T]he claimant's findings are not *consistent*."). The ALJ based his conclusion upon an analysis of approximately 5,000 pages of medical records, including medical opinions from four other physicians; and, importantly, he is not required to "defer[] or give[] any specific evidentiary weight to any medical opinion, even those from a claimant's own medical sources." *T.L.E. v. Comm'r of Soc. Sec.*, No. 5:24-CV-00334-CHW, 2025 WL 2630491, at *5 (M.D. Ga. Sept. 12, 2025) (citing 20 C.F.R. § 404.1520c(a) (finding that a plaintiff overlooked the ALJ's discussion of the record and applicable standards when the ALJ found that Plaintiff was not as limited as she alleged). Because the regulations do not require the ALJ to defer to a specific physician's opinion, and because it is the

ALJ's job to determine the opinions' credibility, the ALJ did not err by finding the doctor's four MSS unpersuasive.

## III.   The Court Cannot Reweigh Evidence

Plaintiff would have the Court reinterpret the record and find that Plaintiff is disabled.  According to Plaintiff, "the record is clear that [his] significant limitations persisted through the relevant period, as well as beyond it."  Pl.'s Br. 18.  Plaintiff points to "[m]ultiple EMG/NCS," right carpal tunnel release surgery in 2018, and "long-term pain management" as evidence bolstering his argument that the doctor's MSS were, in fact, persuasive.  *Id.*  However, the Commissioner—not the Court— must resolve conflicts in evidence and make credibility determinations.  *Wheeler*, 784 F.2d at 1075; *Carnes*, 936 F.2d at 1219.  By contrast, the Court is tasked with ensuring that the Commissioner applied the correct legal standards and reached a conclusion supported by substantial evidence.  *Walker*, 826 F.2d at 1000.  The Court finds that, through the correct application of the relevant standards, the ALJ's decision is supported by substantial evidence. Thus, the Court must affirm.

### CONCLUSION

For the foregoing reasons, the determination of the Social Security Commissioner is affirmed.

**SO ORDERED**, this 26th day of March, 2026.

s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE
